Donald E. Haviland, Jr.
*haviland@havilandhughes.com*
**HAVILAND HUGHES**
201 South Maple Way, Suite 110
Ambler, Pennsylvania 19002
Telephone: (215) 609-4661
Facsimile: (215) 392-4400

*COUNSEL FOR PLAINTIFF*

| | |
|---|---|
| **DEBRA ERLING, AS ADMINISTRATRIX FOR THE ESTATE OF BRIAN ERLING,** *Individually, and as Administratrix,* <br><br> *Plaintiff* <br><br> v. <br><br> **RCI, LLC., WYNDHAM WORLDWIDE CORPORATION, JOHN DOES 1-10, ABC PARTNERSHIPS 1-10, AND XYZ CORPORATIONS/BUSINESS ENTITIES 1-10,** <br><br> *Defendants.* | **Civil Action No.: 2:18-cv-08841-CCC-SCM** <br><br> **CIVIL ACTION** <br><br> **AMENDED CLASS ACTION COMPLAINT** |

## AMENDED CLASS ACTION COMPLAINT

Plaintiff, Debra Erling, individually and as Administratrix for the estate of Brian Erling, residing at 16 Belmont Court, Pittstown, New Jersey 08867, by way of this Amended Complaint and Jury Demand says:

### COUNT ONE
### PLAINTIFF v. ALL DEFENDANTS

1.    On March 30, 2016, Plaintiff's decedent, Brian Erling, was on vacation with his family in Cancun, Mexico.

2.      While on vacation, Mr. Erling and his family rented wave runners from a local vendor, known as "Aquaworld".

3.      The family was told about the local vendor by Defendants in several ways, as described more fully herein, including marketing and promotional materials sent to them and given to them at the hotel they were staying in, which hotel has been approved by Defendants as an appropriate and safe place to stay.

4.      One of these sponsored "adventures" by Defendants was with a local vendor, Aquaworld, that rented wave runners for jet skiing, among other activities. Another sponsored "adventure" was parasailing, also run by Aquaworld, which the family did the day before renting jet skis.

5.      Mr. Erling was provided no warning from the Defendants about the dangers of renting from Aquaworld, despite Defendants knowledge and awareness about such dangers based upon multiple, documented events of people being hurt or killed while on vacation in Cancun.

6.      He was provided no training or instructions on how to operate the wave runners.

7.      Mr. Erling was given no supervision while he operated the wave runner.

8.      Mr. Erling was provided a life preserver that was not properly sized for a man of his stature of 6'2" and 285 pounds.

9.      Mr. Erling's eleven (11) year old son was riding as a passenger on the wave runner Mr. Erling was operating.

10.     Mr. Erling was forced to operate the wave runner in dangerous and choppy water.

11.     Mr. Erling and his son were caused to fall off the wave runner several times due to no fault of their own. Each time he was knocked off the wave runner, Mr. Erling would exert

himself to push his child back up onto the wave runner and then pull himself out of the water onto the wave runner.

12.    After Mr. Erling was able to push his son onto the wave runner, he struggled to emerge out of the choppy water and get back onto the wave runner.

13.    Despite his best efforts, Mr. Erling was unable to get out of the water and began struggling to keep his head above the water and fight for his life.

14.    No help or assistance was provided to Mr. Erling while he was in the water, by anyone at Aquaworld or the hotel.

15.    After pleading from his family, responders dragged Mr. Erling to the shore behind another wave runner.

16.    When Mr. Erling was finally brought to the shore, there was not a qualified person to provide first aid or render medical attention, and the medical equipment was non-functioning.

17.    Mr. Erling died in front of his wife and children.

18.    Brian Erling was forty-three (43) years old at the time of his death.

19.    At the time of his death, Brian Erling left behind his wife, Debra Erling, his two sons, Zachary and Mason, and his daughter Sadie.

20.    The estate of Brian Erling was opened after his death, and Plaintiff Debra Erling was appointed Administratrix for the estate of Brian Erling.

Negligence of Defendants

21.    Defendant, RCI, LLC, ("RCI") is a limited liability company or other business entity organized and existing under the laws of Delaware, registered as Resort Condominiums

International, LLC in New Jersey, with its principal offices located at 14 Sylvan Way

Parsippany, New Jersey 07054.

22.    Defendant RCI has carried out, and continues to carry out, substantial, continuous

and systematic business activities in the State of New Jersey and conducts actual and regular

business in Morris County.

23.    Defendant RCI has a corporate headquarters located in Morris County.

24.    The following corporate officers for Defendant RCI are located in Wyndham

campus, in Parsippany, Morris County, New Jersey:

a.    Michele Allen, Senior Vice President, 22 Sylvan Way, Parsippany, New Jersey 07054;

b.    Marcus A. Banks, Senior Vice President and Assistant Secretary, 22 Sylvan Way, Parsippany, New Jersey 07054;

c.    Christine S. Boyle, Assistant Secretary, 22 Sylvan Way, Parsippany, New Jersey 07054;

d.    Phil Brojan, Senior Vice President, 14 Sylvan Way, Parsippany, New Jersey 07054;

e.    Brian Bruno, Vice President, 14 Sylvan Way, Parsippany, New Jersey 07054;

f.    Lisa Calicchio, Executive Vice President, 14 Sylvan Way, Parsippany, New Jersey 07054;

g.    Frank D. Campana, Senior Vice President, 22 Sylvan Way, Parsippany, New Jersey 07054;

h.    David J. Carlson, Group Vice President, 14 Sylvan Way, Parsippany, New Jersey 07054;

i.    Paul Francis Cash, Executive Vice President, General Counsel, Secretary and Manager 14 Sylvan Way, Parsippany, New Jersey 07054;

j.    Christine Ciccone, Vice President, 14 Sylvan Way, Parsippany, New Jersey 07054;

k.    Thomas G. Conforti, Executive Vice President, 22 Sylvan Way, Parsippany, New Jersey 07054;

l.    Richard E. Constable, III, Senior Vice President, 22 Sylvan Way, Parsippany, New Jersey 07054;

m.    Rita A. Coviello, Group Vice President, 14 Sylvan Way, Parsippany, New Jersey 07054;

n.    Susan Loring Crane, Group Vice President and Assistant Secretary, 22 Sylvan Way, Parsippany, New Jersey 07054;

o.    Fiona G. Downing, Senior Vice President, 14 Sylvan Way, Parsippany, New Jersey 07054;

p.    Kenneth Drake, Group Vice President and Assistant Secretary, 14 Sylvan Way, Parsippany, New Jersey 07054;

q.    Gregory T. Geppel, Senior Vice President, 22 Sylvan Way, Parsippany, New Jersey 07054;

r.    Jennifer Giampietro, Group Vice President and Assistant Secretary, 22 Sylvan Way, Parsippany, New Jersey 07054;

s.    Gordon Scott Gurnik, President, 14 Sylvan Way, Parsippany, New Jersey 07054;

t.    Jeffrey R. Leuenberger, Senior Vice President and Treasurer, 22 Sylvan Way, Parsippany, New Jersey 07054;

u.    Claire J. Mahoney, Senior Vice President and Chief Financial Officer, 14 Sylvan Way, Parsippany, New Jersey 07054;

v.    Gail Lynn Mandel, Chief Executive Officer, 14 Sylvan Way, Parsippany, New Jersey 07054;

w.    Scott G. McLester, Executive Vice President and Assistant Secretary, 22 Sylvan Way, Parsippany, New Jersey 07054;

x.    Steve Meetre, Senior Vice President and Assistant Secretary, 22 Sylvan Way, Parsippany, New Jersey 07054;

y.    Korin A. Neff, Senior Vice President and Assistant Secretary, 22 Sylvan Way, Parsippany, New Jersey 07054;

z.    Rishi Nigam, Senior Vice President, 14 Sylvan Way, Parsippany, New Jersey 07054;

aa.    Ronald W. Pearce, Senior Vice President and Global Controller, 14 Sylvan Way, Parsippany, New Jersey 07054;

bb.   Nicola Rossi, Senior Vice President and Manager, 22 Sylvan Way, Parsippany, New Jersey 07054;

cc.   Frank Sassano, Vice President and Assistant Treasurer, 22 Sylvan Way, Parsippany, New Jersey 07054;

dd.   Ciara Eavan Sisk, Senior Vice President, 14 Sylvan Way, Parsippany, New Jersey 07054;

ee.   William A. Skrzat, Senior Vice President, 22 Sylvan Way, Parsippany, New Jersey 07054;

ff.   Barbara J. Spengler, Senior Vice President and Chief Information Officer, 14 Sylvan Way, Parsippany, New Jersey 07054;

gg.   Michael J. Toscano, Senior Vice President and Manager, 14 Sylvan Way, Parsippany, New Jersey 07054; and

hh.   Michael E. Waring, Vice President, 22 Sylvan Way, Parsippany, New Jersey 07054

25.   At all relevant times, Defendant RCI was acting by and through its employees, servants, and agents, acting within the course and scope of their employment, service and agency.

26.   Defendant, WYNDHAM WORLDWIDE CORPORATION, ("WWC") is a corporation or other business entity organized and existing under the laws of Delaware with its principal place of business and principal executive offices at 22 Sylvan Way, Parsippany, New Jersey 07054.

27.   Defendant WWC has carried out, and continues to carry out, substantial, continuous and systematic business activities in the State of New Jersey and conducts actual and regular business in Morris County.

28.   At all relevant times, Defendant WWC was acting by and through its employees, servants, and agents, acting within the course and scope of their employment, service and agency.

29.     Plaintiff alleges that an insufficient amount of time has passed within which to determine the identity of certain individuals, partnerships, corporations and/or other parties that may be responsible for the causation of the accident.  Said individuals and business entities have been named as John Does 1-10, ABC Partnerships 1-10, and XYZ Corporations/Business Entities 1-10.  Plaintiff reserves the right to further amend the Complaint to add the names of the individuals and companies once the names are discovered.

30.     These individuals and companies are other entities involved in timeshare rentals and vacation exchanges, and at all times, these entities were responsible to ensure that the properties that they contracted with and sent members to provided safe and appropriate vacation experiences and that these entities did not needlessly expose their members and customers to dangerous and life-threatening venders.

**Defendants' acts of negligence and recklessness.**

31.     At all times material hereto, Plaintiff's brother participated as a member of Wyndham Resort Development Corporation doing business as WorldMark by Wyndham. WorldMark by Wyndham is owned and operated by WWC.

32.      As a member or WorldMark by Wyndham, Plaintiff's brother was provided the opportunity to participate in a timeshare exchange program, known as the RCI Points Exchange Program.

33.     It is alleged that the RCI Points Exchange Program was owned, operated and controlled by Defendant RCI and/or Defendant RCI's parent company, Defendant WWC.

34.     RCI is a wholly owned subsidiary of parent company Defendant WWC.

35.     RCI holds itself out as the leader in vacation exchange rentals, offering the world's largest vacation exchange network.

36.     RCI insists that it provides unrivaled products and services to enhance the vacation ownership experience for its members.

37.     RCI assists its subscribing members (and their families) in taking the vacations of their dreams and exploring the world through access to over 4,300 affiliated resorts in 110 countries.

38.     One such resort is the Crown Paradise Hotel in Cancun Mexico.

39.     At all times material hereto, the Crown Paradise Hotel permitted the vendor Aquaworld to enter the hotel, to maintain a kiosk, to supply advertising and promotional material, to allow Aquaworld employees to enter the premises to solicit patrons, and to pick up and drop off patrons, and to advertise, solicit and promote its excursions,including wave runners, at the Crown Paradise Hotel to hotel guests.

40.     At all times material hereto, the Crown Paradise Hotel and its trained staff sponsored and promoted the vendor Aquaworld and its adventures, including rental of wave runners.

41.     Crown Paradise Hotel also provided shuttle service to guests from the hotel directly to Aquaworld.

42.     Further, representatives of Aquaworld were made available at Crown Paradise Hotel to guests for booking adventures and excursions directly on site.

43.     Aquaworld is a dangerous vendor who has consistently placed American tourists in harm's way.

44.     Aquaworld has been sued multiples times for its acts and omissions that have caused American tourists harm.  Aquaworld has chosen not to defend itself in such suits, choosing instead to allow default judgment to be entered against it.  Aquaworld has a complete

disregard for American tourists, American laws, and American standards of safety in the conduct of watersport activities, like jet skiing.

45.     At all times material hereto, Defendants RCI and WWC knew or reasonably should have known that Aquaworld was exposing their members and customers to unreasonably dangerous conditions, like those experienced by the Erlings.

46.     At all times material hereto, Defendants RCI and WWC knew or reasonably should have known that RCI members and customers would be deceived into believing that Aquaworld was a safe and reliable vendor based upon Aquaworld being given access to an RCI-approved, "Gold Crown" hotel, in order to promote its services, including the use of wave runners.

47.     In addition, there was an office in the Crown Paradise Hotel dedicated to RCI's use for its exchange services.  The hotel staff would, at check-in, greet guests, hand them promotional materials for the RCI "amenities", like jet-skiing, and would direct guests to the RCI office and amenities kiosk on site.

48.     Prior to March 30, 2016, the Erling family chose their vacation location and the resort that they stayed at based upon the representations made by Defendants RCI and/or WWC about its quality, condition and amenities. Plaintiff's brother transferred his rights to use resort vacation time to the Erling family, and Defendants approved such transfer.

49.     The Erlings hired RCI and WWC to schedule their trip to Cancun, and relied upon Defendants' representations about the quality, condition and safety of the hotel and its amenities in choosing to stay there..

50.     For such services, RCI and WWC were paid by the Erlings.

51.    The Erlings booked their trip to Cancun, and the Crown Paradise Hotel (also referred to as the "hotel"), through RCI and WWC.

52.    At all times relevant, Defendants RCI and WWC represented that the Crown Paradise Hotel in Cancun, Mexico was a luxury resort, safe for families, like the Erling family.

53.    At all times relevant, Defendants RCI and WWC promoted wave runners, jet skiing, and related activities to their guests and listed such amenities on its websites and in the RCI confirmation sent to the Erlings in New Jersey.

54.    Further, immediately upon check-in, trained hotel staff directed Mr. Erling and his family to an office by the front desk where they were prompted to sign up for "adventures," or excursions, sponsored and promoted by the hotel.  One such excursion was parasailing operated by Aquaworld.  Another was jet skiing, also operated by Aquaworld.  The Erlings took both excursions on consecutive days.

55.    An Aquaworld representative was available onsite at the hotel.  The hotel also provided shuttle service to guests from the hotel directly to Aquaworld.  Thus, the hotel was fully aware of Aquaworld, and permitted its representatives to solicit business on the hotel premises.

56.    Defendants were fully aware of Aquaworld, and promoted it on its website and in the confirmation sent to the Erlings.  They listed jet skiing as an "amenity" of the hotel in the information packet they sent to the Erlings prior to leaving the United States.  They listed the distance between the hotel and the jet skiing amenity as the same approximate distance between the hotel and Aquaworld.

57.    Despite being aware of Aquaworld, promoting Aquaworld, and sponsoring their services as an amenity of their Gold Crown certified resort hotel, Defendants failed to warn the Erlings of the dangers of Aquaworld.

10

58.    Defendants knew or should have known that dozens of Americans have been injured while engaging in water activities operated by Aquaworld.  And yet, they failed to warn the Erlings in any manner of the dangers of using Aquaworld.

59.    Defendants' carelessness, negligence, gross negligence, recklessness, outrageous conduct, and other liability-producing conduct caused the death of Brian Erling.

60.    As a direct and proximate result of the joint and several negligence of Defendants, Brian Erling sustained serious and fatal injuries which resulted in considerable conscious pain and suffering and ultimately led to his death.

61.    Consequently, Plaintiff, Debra Erling, individually, and as Administratrix for the estate of Brian Erling, demands judgment against Defendants, RCI, WWC, John Does 1-10, ABC Partnerships 1-10, and XYZ Corporations/Business Entities 1-10 individually, jointly, severally, or in the alternative, for an amount which would reasonably and properly compensate Plaintiff in accordance with the laws of the State of New Jersey, together with interest and costs of suit.

WHEREFORE, Plaintiff demands judgment against the Defendants jointly, severally and/or in the alternative for such damages as may be permitted pursuant to the laws of New Jersey, together with interest, costs and attorney's fees.

## COUNT TWO– NEGLIGENCE
## PLAINTIFF V. RCI and WWC

62.    Plaintiff hereby incorporates by reference the allegations within all preceding and following paragraphs of this Complaint as if they were fully set forth herein, and further alleges as follows.

63.    If not for the representations made by Defendants RCI and WWC about the quality, condition and safety of Aquaworld, as an amenity of the Crown Paradise Hotel, the

Erling family would never have agreed to stay at the Crown Paradise Hotel or rented wave runners from Aquaworld.

64.     Defendants RCI, WWC, John Does 1-10, ABC Partnerships 1-10, and XYZ Corporations/Business Entities 1-10 had the duty to ensure that the resorts it was offering to its members and customers and the activities and adventures it sponsored and recommended would not needlessly endanger their members.

65.     Defendants RCI, WWC, John Does 1-10, ABC Partnerships 1-10, and XYZ Corporations/Business Entities 1-10 had the duty to ensure that the resorts it was offering to its members and customers would provide a reasonably safe environment, free from unreasonable hazards for them to safely vacation.

66.     Although Defendants RCI, WWC, John Does 1-10, ABC Partnerships 1-10, and XYZ Corporations/Business Entities 1-10 knew or should have known of the hazardous conditions and dangers associated with Aquaworld, the Defendants permitted such hazardous conditions to exist and/or failed to warn about and/or failed to eliminate those hazardous conditions.

67.     Defendants RCI, WWC, John Does 1-10, ABC Partnerships 1-10, and XYZ Corporations/Business Entities 1-10 breached their duty, by and through their officers, directors, agents, servants, and/or employees, and were jointly and severally careless, negligent, grossly negligent and/or reckless as follows:

       a.     Failing to warn their members and customers about the dangers of using Aquaworld for water sport activities, and negligently or recklessly exposing such members and customers to needless hazards;

       b.     Failing to inspect to ensure that the vendors allowed to enter the resorts they were recommending were appropriate and safe;

c.    Failing to inspect to ensure that the resorts they were recommending and affiliated with were free of dangerous and unsafe vendors;

d.    Knowing that dangerous and unsafe vendors were soliciting business from their members and customers who stayed at their affiliated resorts, but failing to regulate, impede or restrict such activities;

e.    Knowing that dangerous and unsafe vendors were actively promoted by hotel staff for business from their members and customers who stayed at their affiliated resorts but failing to regulate, impede or restrict such activities;

f.    Failing to prevent dangerous and unsafe vendors from soliciting business from their members and customers who stayed at their affiliated resorts;

g.    Failing to prevent dangerous and unsafe vendors from being actively promoted by hotel staff for business from their members and customers who stayed at their affiliated resorts;

h.    Representing to members and customers that the Crown Paradise Hotel was a safe hotel for members and customers to stay;

i.    Representing to members and customers that the vendors in their affiliated resorts were reputable and safe, including Aquaworld, the operator of the listed jet skiing amenity;

j.    Allowing members and customers to stay in a resort that permitted dangerous vendors onto their property and promoted their activities; and,

k.    Failing to warn members and customers, including Plaintiff and Plaintiff's decedent Brian Erling, of dangerous vendors, such as Aquaworld.

68.    By reason of the negligence, carelessness, gross negligence, and recklessness of Defendants, as aforesaid, Plaintiff's decedent, Brian Erling, was caused to suffer a heart attack, which contributed to his death as set forth above.

69.    By conducting themselves as aforesaid, the Defendants' acts and/or omissions were a proximate cause of decedent Brian Erling's death.

WHEREFORE, Plaintiff demands judgment against the Defendants jointly, severally and/or in the alternative for such damages as may be permitted pursuant to the laws of New Jersey, together with interest, costs and attorney's fees.

## COUNT THREE – WRONGFUL DEATH
## PLAINTIFF v. ALL DEFENDANTS

70.      Plaintiff hereby incorporates by reference the allegations within all preceding and following paragraphs of this Complaint as if they were fully set forth herein, and further alleges as follows.

71.      By reason of the carelessness, negligence, and intentional conduct of Defendants by and through their agents, servants, workmen, contractors and/or employees as aforesaid, Plaintiff's decedent, Brian Erling, was caused to sustain devastating, catastrophic and fatal injuries, including but not limited to a heart attack, on March 30, 2016.

72.      Plaintiff's decedent, Brian Erling, sustained a loss of earnings and a loss of earning capacity, and as a result of his wrongful death, he was prevented from performing all his usual duties, occupations and avocations, all to his great loss and detriment.

73.      As a direct and proximate result of the foregoing, the beneficiaries of Plaintiff's decedent have been and will continue to be wrongfully deprived of the services, society and comfort, which the decedent would have provided.

74.      As a direct and proximate result of the foregoing, the beneficiaries have been, and will continue to be, deprived of the guidance, tutelage and moral upbringing which they would have received from the decedent but for the Defendants' negligence.

75.      As a direct and proximate result of the foregoing, decedent's wrongful death beneficiaries suffered, are suffering for an indefinite period of time, and in the future will suffer damages, injuries and losses including, but not limited to, a loss of financial support, and the

beneficiaries have been wholly deprived of the contributions that they would have received from the decedent, Brian Erling, including money which the decedent would have provided for items such as clothing, shelter, food, medical care, vacations, entertainment, recreation and gifts.

76.    As a direct and proximate result of the foregoing, decedent's wrongful death beneficiaries have been, continue to be, and will be in the future, deprived of large and various sums of money which the decedent would have contributed in support.

77.    As a direct and proximate result of the foregoing, the decedent's wrongful death beneficiaries have been caused to incur funeral, burial and estate administration expenses.

78.    By reason of the carelessness, negligent, and other liability producing conduct of the Defendants, decedent's beneficiaries are suffering, and will for an indefinite period of time in the future suffer, damages, injuries and losses including, but not limited to, the deprivation of services, support, income, consortium, counsel, aid, association, care, society and comfort which decedent would have provided, including work around the home, physical comforts and services, society and comforts.

79.    Plaintiff claims on behalf of the decedent's heirs-at-law and next-of-kin, and on her own behalf, all damages recoverable under New Jersey Wrongful Death Act, N.J. Stat. Ann §2A:31-1 *et. seq*.

80.    Plaintiff claims on behalf of the Estate, for the loss of earnings, earning capacity, and for all other damages recoverable under the New Jersey Wrongful Death Act, N.J. Stat. Ann §2A:31-1 *et. seq*.

WHEREFORE, Plaintiff demands judgment against the Defendants jointly, severally and/or in the alternative for such damages as may be permitted pursuant to the laws of New Jersey, together with interest, costs and attorney's fees.

## COUNT FOUR – SURVIVAL ACT
## <u>PLAINTIFF v. ALL DEFENDANTS</u>

81.     Plaintiff hereby incorporates by reference the allegations within all preceding and following paragraphs of this Complaint as if they were fully set forth herein, and further alleges as follows.

82.     By reason of the carelessness, negligence, and other liability producing conduct of Defendants, by and through their agents, servants, workmen, contractors and/or employees as aforesaid, Plaintiff's decedent, Brian Erling, was caused to sustain devastating, catastrophic and fatal injuries, including a heart attack, on March 30, 2016.

83.     Plaintiff's decedent, Brian Erling, was caused to suffer devastating pain and suffering and traumatic, intangible losses; he suffered anxiety, mental anguish and fear of impending death; he sustained a loss of future earnings and a loss of earning capacity; he sustained disability and impairment; he sustained a permanent loss of enjoyment of life and loss of life's pleasures; and as a result of his premature death, he was and will be forever prevented from performing all his usual duties, occupations and avocations, all to his great loss and detriment by reason of the intentional harm, negligence, carelessness, recklessness, and/or gross negligence of the Defendants.

84.     Plaintiff claims on behalf of the Estate of Brian Erling, deceased, all damages recoverable by virtue of the New Jersey Survival Act, N.J. Stat. Ann. § 2A: 15-3, *et. seq*.

WHEREFORE, Plaintiff demands judgment against the Defendants jointly, severally and/or in the alternative for such damages as may be permitted pursuant to the laws of New Jersey, together with interest, costs and attorney's fees.

## COUNT FIVE – VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT
## PLAINTIFF v. ALL DEFENDANTS

85.     Plaintiff hereby incorporates by reference the allegations within all preceding and following paragraphs within this Complaint as if they were fully set forth herein, and further alleges as follows.

86.     The New Jersey Consumer Fraud Act, N.J. Stat. § 56:8-1, *et seq*. ("NJCFA"), provides that the "act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice."

87.     The unconscionable, unfair, and deceptive acts and practices described herein are declared unlawful under the NJCFA.

88.     The NJCFA authorizes any person, including "any natural person or his legal representative, partnership, corporation, company, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or cestuis que trustent thereof" to seek an injunction, damages, costs, and reasonable attorneys' fees to prevent and ameliorate the unfair and deceptive conduct described herein.

89.     Plaintiff and members of the Class described below are persons pursuant to the NJCFA.  Plaintiff and the Class have been injured as a result of the Defendants' unconscionable, unfair, and deceptive conduct described herein in violation of the NJCFA, and hereby seek damages.

17

90.    The acts and circumstances described herein demonstrate that Defendants acted unlawfully within the meaning of the NJCFA such that Plaintiff and the Class may be awarded up to three times the actual damages sustained, and such additional relief as deemed necessary or proper.

91.    Plaintiff and the Class seek relief against Defendants for their unconscionable commercial practices with regard to their timeshare rentals and vacation exchanges in Cancun, Mexico which exposed Plaintiff and the Class of members and customers to dangerous and life-threatening vendors.

92.    Defendants' carelessness, negligence, gross negligence, recklessness, outrageous conduct, and other liability-producing conduct caused the death of Brian Erling.  It is believed and therefore averred that other members of the Class have been equally exposed to dangerous and life-threatening vendors in Mexico.

93.    Defendants' false promises and misrepresentations of safe and appropriate vacation experiences which Plaintiff relied upon caused Brian Erling to sustain serious and fatal injuries, which resulted in considerable conscious pain and suffering and ultimately led to his death.

94.    Defendants' unconscionable conduct caused Plaintiff and the Class to pay prices for vacation experiences that were neither safe nor appropriate as represented by Defendants. Therefore, Plaintiff and the Class are entitled to relief under the NJCFA.

95.    Defendants are engaging in unconscionable commercial practices in trade or commerce that directly or indirectly harmed consumers in New Jersey within the meaning of the NJCFA.

96.    Defendants' conduct, by engaging in the acts and practices set forth above,

18

constitutes unconscionable commercial practices, deception, fraud, false pretenses, false promises, misrepresentations, or the knowing, concealment, suppression, or omission of material facts with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of merchandise, in violation of the NJCFA.

97.    Defendants willfully engaged in such practices, knowing them to be unconscionable, unfair, and deceptive or with reckless disregard for how their misrepresentations and deception would impact Plaintiff and the Class.  The Defendants intended and/or expected that vacationing consumers, including Plaintiff and the Class, would pay for unsafe and inappropriate vacation experiences to their substantial detriment.

98.    The wrongful conduct and unconscionable, unfair, and deceptive commercial practices alleged in this Complaint have occurred, and continue to occur, in the ordinary course of the Defendants' business or occupation and have caused great harm to consumers like Plaintiff and the Class who were foreseeable and direct victims.

99.    Plaintiff and the Class were injured as a direct and proximate result of the Defendants' conduct in violation of New Jersey law and hereby seek declaratory and injunctive relief and damages.

WHEREFORE, Plaintiff and the Class demand that judgment be entered in their favor and against Defendants jointly, severally and/or in the alternative for such damages as may be permitted pursuant to the laws of New Jersey, together with interest, costs and attorney's fees, and any such other relief deemed just and appropriate by this Court.

**COUNT SIX – FRAUD**
**PLAINTIFF v. ALL DEFENDANTS**

100.    Plaintiff hereby incorporates by reference the allegations within all preceding and following paragraphs within this Complaint as if they were fully set forth herein, and further

19

alleges as follows.

101.    Defendants' acts violate New Jersey common law against negligent misrepresentation and fraud.

102.    By engaging in the acts alleged in this Complaint, Defendants negligently misrepresented, among other things, the quality, condition, and safety at the resort to which they sent the Erlings and committed fraud on the Plaintiff and the Class by their misrepresentations and deceptions.

103.    Defendants were responsible to ensure that the properties that they contracted with and sent members and customers to provided safe and appropriate vacation experiences, and that these entities did not needlessly expose their members and customers to dangerous and life-threatening venders.  Instead, however, Defendants made false and deceptive representations regarding the quality, condition, safety and appropriateness of Plaintiff's vacation experience, which ultimately resulted in the death of Brian Erling.  Similar false and deceptive representations have been made to other members and customers by the Defendants.

104.    These fraudulent representations were material to the matters at hand because Plaintiff and the Class used and relied upon Defendants' representations about the quality, condition, safety and appropriateness in choosing to engage in their vacation experience in Mexico.

105.    As set forth more fully herein, Plaintiff and her family chose the vacation location, the resort that they stayed at, and their vacation experience in Mexico based upon the representations of the Defendants with regard to quality, condition, safety and appropriateness, which were untrue, thus constituting fraudulent representations which the Defendants knew to be false, or in the absence of recklessness, should have known to be false.  The same is true of the

members of the Class.

106.    Defendants' material, factual misrepresentations about quality, condition, safety and appropriateness of vacation experiences in Mexico were made with the knowledge or belief of their falsity, and with the intent of misleading Plaintiff and the Class.

107.    Defendants intentionally made these false and fraudulent representations about the quality, condition, safety and appropriateness of vacation experiences in Mexico to mislead consumers like Plaintiff and the Class into relying on those representations and paying to stay at resorts in Cancun, Mexico to their detriment.

108.    Plaintiff and the Class justifiably relied upon these fraudulent representations in staying at the Cancun resort, and then being exposed to unsafe, inappropriate, and unreliable vendors to their detriment.

109.    As a direct and proximate result of the fraudulent representations of the Defendants as set forth above, Plaintiff and the Class were harmed in that they were unaware of the unsafe, inappropriate, and unreliable vendors recommended by Defendants and their sponsored resorts, and they would not have paid for such vacation experiences had they known of the fraudulent representations.   As a result, Plaintiff and the Class overpaid for the vacation experiences because of these fraudulent representations, thereby incurring ascertainable losses.

WHEREFORE, Plaintiff and the Class demand that judgment be entered in their favor and against Defendants jointly, severally and/or in the alternative for such damages as may be permitted pursuant to the laws of New Jersey, together with interest, costs and attorney's fees, and any such other relief deemed just and appropriate by this Court.

### COUNT SEVEN – CONSPIRACY TO DEFRAUD/CONCERTED ACTION
### PLAINTIFF v. ALL DEFENDANTS

110.    Plaintiff hereby incorporates by reference the allegations within all preceding and

21

following paragraphs within this Complaint as if they were fully set forth herein, and further alleges as follows.

111.    As set forth more fully above, beginning at least as early as 2016, the exact date being unknown to the Plaintiff, and continuing thereafter until the present, Defendants and other unnamed co-conspirators, between and among themselves and others, entered into an agreement and/or otherwise engaged in a continuing conspiracy to defraud and deceive Plaintiff and the Class by causing them to pay for vacation experiences they otherwise would not have paid for in the absence of the Defendants' conspiracy and concerted action.

112.    Pursuant to the unfair and deceptive scheme to misrepresent the safety, reliability, and appropriateness of vacation experiences to derive substantial profits, and the conspiracy alleged herein, and in furtherance thereof, Defendants and their co-conspirators engaged in a wide range of activities, the purpose and effect of which was to deceive consumers like Plaintiff and the Class and acted or took substantial steps in furtherance of the conspiracy.  Those acts include the following:

a.    discussing and agreeing among themselves and with their co-conspirators that they would misrepresent that their members and customers were not being exposed to needless hazards in Mexico;

b.    discussing and agreeing among themselves and with their co-conspirators that they would misrepresent that the vendors in the Mexican resorts they were recommending were appropriate and safe;

c.    discussing and agreeing among themselves and with their co-conspirators that they would misrepresent that the Mexican resorts they were recommending and affiliated with were free of dangerous and unsafe Mexican vendors;

d.    discussing and agreeing among themselves and with their co-conspirators that they would conceal that they knew that dangerous and unsafe Mexican vendors were soliciting business from their members and customers who stayed at their affiliated resorts;

e.      discussing and agreeing among themselves and with their co-conspirators that they would fail to prevent dangerous and unsafe Mexican vendors from soliciting business from their members and customers who stayed at their affiliated resorts;

f.      discussing and agreeing among themselves and with their co-conspirators that they would promote dangerous and unsafe Mexican vendors to their members and customers who stayed at their affiliated resorts;

g.      discussing and agreeing among themselves and with their co-conspirators that they would misrepresent to members and customers that the Crown Paradise Hotel was a safe hotel for members and customers to stay;

h.      discussing and agreeing among themselves and with their co-conspirators that they would misrepresent to members and customers that the Mexican vendors in their affiliated resorts were reputable and safe;

i.      discussing and agreeing among themselves and with their co-conspirators that they would allow members and customers to stay in a Mexican resort that permitted dangerous vendors onto their property;

j.      discussing and agreeing among themselves and with their co-conspirators that they would fail to warn members and customers, including Plaintiff and Plaintiff's decedent Brian Erling, and members of the Class, of dangerous vendors, such as Aquaworld; and

k.      discussing and agreeing among themselves and with their co-conspirators that they would conceal and suppress the truth about the lack of safety, appropriateness, and reliability of Mexican vacation experiences.

113.    In addition to the specific facts set forth above, it is alleged the Defendants and their co-conspirators engaged in conspiratorial meetings, among the purposes of which meetings were to discuss the importance of controlling the representations of quality, condition, safety and appropriateness of Mexican vacation experiences, and deriving substantial profits from these representations.

114.    Defendants performed the conspiratorial acts set forth herein intending to injure customers like Plaintiff and the Class by causing them to pay prices they otherwise would not have paid so that Defendants could derive substantial profits.

115.    Defendants performed the acts alleged herein in furtherance of the common plan or design for the conspiracy with intent and/or with knowledge of the injury and damage it would cause to consumers like Plaintiff and the Class, and with knowledge and intent to cause such injuries and/or with reckless disregard for the consequences.

116.    As a direct and proximate result of the Defendants' conspiracy as alleged herein, Plaintiff and the Class have been injured and damaged, and the Defendants are jointly and severally liable for such injuries and damages.

WHEREFORE**,** Plaintiff and the Class demand that judgment be entered in their favor and against Defendants jointly, severally and/or in the alternative for such damages as may be permitted pursuant to the laws of New Jersey, together with interest, costs and attorney's fees, and any such other relief deemed just and appropriate by this Court.

## CLASS ACTION ALLEGATIONS

117.    Plaintiff hereby incorporates by reference the allegations within all preceding and following paragraphs within this Complaint as if they were fully set forth herein, and further alleges as follows.

118.    Plaintiff brings this action pursuant to Rule 4:32-1(a), (b)(1), (b)(2) and (b)(3) of the New Jersey Civil Practice Rules on behalf of herself and other similarly-situated persons and consumers in New Jersey and throughout the country.  The proposed Class includes:

> All persons for whom Defendants arranged a Mexican vacation at an RCI-approved resort and who travelled to such resort during the period of March 2014 through the present.

Excluded from the above Class are: (a) Defendants and any entity in which Defendants have a controlling interest, and their legal representatives, offices, directors, assignees and successors, and (b) any co-conspirators with Defendants, their representatives, assignors, assignees or related entities.

### *Numerosity*

119.    The proposed Class consists of potentially thousands of consumers located throughout New Jersey and the United States, based on the fact that Defendants have been involved in timeshare rentals and vacation exchanges for many years, soliciting and accepting payments from consumers based on their false representations of quality, condition, safety and appropriateness of Mexican vacation experiences.  Thus, the Class is so numerous that joinder of all of its members is impractical.

120.    Despite the size of the Class, its members are easily identifiable, as each consumer directly interacted with Defendants and presented payment to Defendants for their Mexican vacation experiences.  As a result, the records needed to identify the members of the Class are in the hands of the Defendants.

### *Typicality*

121.    Plaintiff's claims are typical of the claims of the Class, in that the representative Plaintiff is a consumer who, like other Class Members, paid for an unsafe and inappropriate Mexican vacation experience due to the unlawful conduct of the Defendants.  Plaintiff, like all similarly-situated Class members, is damaged and sustained or continues to sustain economic injuries in the form of payments and losses of money due to the misconduct of the Defendants, including but not limited to the fact that she paid prices for an unsafe and inappropriate Mexican vacation experience that she would not have paid absent Defendants' improper actions.

*Adequacy of Representation*

122.    Plaintiff can and will fairly and adequately represent and protect the interests of the Class.  Plaintiff has no interest that conflicts with or is antagonistic to the interests of the Class.

123.    Plaintiff is represented by counsel who are experienced and competent in the prosecution of complex actions, including consumer fraud class actions.

*Commonality*

124.    The factual and legal bases for the Defendants' misconduct are common to Class members and represent a common thread of consumer fraud resulting in injury to Plaintiff and the Class.  Common questions of law and fact in this case include, but are not limited to, the following:

  a.    whether the Defendants failed to ensure their members and customers are not being exposed to needless hazards;

  b.    whether the Defendants failed to ensure that the vendors in the Mexican resorts they were recommending were appropriate and safe;

  c.    whether the Defendants failed to ensure that the Mexican resorts they were recommending and affiliated with were free of dangerous and unsafe vendors;

  d.    whether the Defendants knew that dangerous and unsafe vendors were soliciting business from their members and customers who stayed at their affiliated Mexican resorts;

  e.    whether the Defendants failed to prevent dangerous and unsafe vendors from soliciting business from their members and customers who stayed at their Mexican affiliated resorts;

  f.    whether the Defendants promoted dangerous and unsafe vendors to their members and customers who stayed at their Mexican affiliated resorts;

  g.    whether the Defendants represented to members and customers that the Crown Paradise Hotel was a safe hotel for members and customers to stay;

26

h.  whether the Defendants represented to members and customers that the vendors in their Mexican affiliated resorts were reputable and safe;

i.  whether the Defendants allowed members and customers to stay in a Mexican resort that permitted dangerous vendors onto their property;

j.  whether the Defendants failed to warn members and customers, including Plaintiff and Plaintiff's decedent Brian Erling, of dangerous vendors, such as Aquaworld;

k.  whether the Defendants defrauded Plaintiff and the Class;

l.  whether the Defendants engaged in a conspiracy and/or concerted conduct in deceiving and defrauding Plaintiff and the Class about the quality, condition, safety and appropriateness of Mexican vacation experiences, and concealed the truth about their unlawful conduct in colluding to profit from their deception;

m.  whether the Defendants are liable to Plaintiff and the Class for statutory damages for conduct actionable under the New Jersey Consumer Fraud Act and consumer protection laws of other states;

n.  whether Plaintiff and members of the Class are entitled to declaratory and injunctive relief as to Defendants' conduct;

o.  whether Plaintiff and members of the Class are entitled to compensatory damages, and, if so, the nature of such damages;

p.  whether Plaintiff and members of the Class are entitled to statutory damages, including treble damages;

q.  the proper measure of damages; and

r.  whether Plaintiff and members of the Class are entitled to an award of punitive damages, reasonable attorneys' fees, prejudgment interest, post-judgment interest, costs of suit, and other appropriate relief under the circumstances of this case.

### *Predominance*

125.  These questions of law and fact common to the members of the Class

predominate over questions, if any, that may affect only individual members because Defendants

have acted and refused to act on grounds generally applicable to the entire Class.  Such generally

applicable conduct is inherent in Defendants' fraudulent misrepresentations and deception, and other conduct as more fully alleged herein.

*Superiority*

126.    A class action is superior to any other available method for the fair and efficient adjudication of this controversy in that, among other things, such treatment will permit a large number of similarly situated persons and entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender.

127.    The prosecution of separate actions by individual members of the Plaintiff and the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class.  These adjudications would establish incompatible standards of conduct for the Defendants which would, as a practical matter, be disparities of the claims of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

128.    The Defendants have acted or refused to act on grounds generally applicable to all members of the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

129.    Accordingly, class certification is appropriate under Rule 4:32 (b)(1)(A), (b)(1)(B), (b)(2) and (b)(3).

WHEREFORE, Plaintiff and the Class demand that judgment be entered in their favor and against Defendants jointly, severally and/or in the alternative for such damages as may be permitted pursuant to the laws of New Jersey, together with interest, costs and attorney's fees, and any such other relief deemed just and appropriate by this Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class demand judgment on each Cause of Action

against Defendants, jointly and severally, awarding Plaintiff and the Class:

1.      compensatory damages in an amount sufficient to fairly and completely
        compensate Plaintiff and the Class for all damages;

2.      treble damages, penalties, and costs pursuant to New Jersey Consumer Fraud Act
        violation of N.J. Stat. § 56:8-1, *et seq;*

3.      a declaratory judgment and an injunction requiring Defendants to abate their
        misrepresentations and to comply with the law;

4.      punitive damages;

5.      interests, costs, and attorney's fees; and

6.      such other and further relief as this Court deems just and proper.


Dated:  June 18, 2018                              BY: *s/ Donald E. Haviland, Jr.*
                                                   Donald E. Haviland, Jr., Esquire
                                                   HAVILAND HUGHES
                                                   201 South Maple Way, Suite 110
                                                   Ambler, Pennsylvania 19002
                                                   Telephone: (215) 609-4661
                                                   Facsimile: (215) 392-4400
                                                   Email: haviland@havilandhughes.com

                                                   *Counsel for Plaintiff, Debra Erling*

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.


Dated:  June 18, 2018                    BY: _s/Donald E. Haviland, Jr._
                                             Donald E. Haviland, Jr., Esquire
                                             HAVILAND HUGHES
                                             201 South Maple Way, Suite 110
                                             Ambler, Pennsylvania 19002
                                             Telephone: (215) 609-4661
                                             Facsimile: (215) 392-4400
                                             Email: haviland@havilandhughes.com

                                             *Counsel for Plaintiff, Debra Erling*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel hereby certifies that a true and correct copy of the foregoing Amended Class Action Complaint was electronically filed this 18th day of June, 2018, causing service to be made through the Court's ECF system upon all counsel of record.

*s/ Donald E. Haviland, Jr.*
DONALD E. HAVILAND, JR.
